## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

| | | |
|---|---|---|
| TED BROUGHTON, on his own and on behalf of all similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) | Civ. No. 2:20-cv-00041-SPC-NPM |
| | ) | |
| PAYROLL MADE EASY, INC. d/b/a CONTINUUM HR, a Florida corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## SECOND AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICES TO SETTLEMENT CLASS

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff TED BROUGHTON (Plaintiff') on his own and on behalf of all similarly situated individuals, and Defendant PAYROLL MADE EASY, INC. d/b/a CONTINUUM HR ("Defendant" or "Continuum HR"), file their Second Amended Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class, addressing the Court's concerns raised by the Court at the July 8, 2021 status conference, and respectfully state as follows:

## I.    NATURE AND STAGE OF PROCEEDINGS

### A.    Background of the Litigation

In his Complaint, Plaintiff alleges that Defendant willfully violated

§§1681b(b)(2)(a)(i) and (ii) of the Fair Credit Reporting Act, 15 U.S.C. 1681a-1681x ("**FCRA**") in connection with procuring background reports for employment purposes. More specifically, Plaintiff alleges that the FCRA disclosure and authorization form provided by Continuum HR was deficient because 1) it did not inform job applants that a consumer reporting agency would be compiling their consumer report information, 2) it failed to disclose that that the consumer report was being used for employment purposes, and 3) it contained an impermissible liability waiver purporting to release Continuum HR and/or its agents and any entity providing information included in the investigation into the applicant's background. Defendant denies Plaintiff's allegations and denies that it committed any violation of the FCRA.

Plaintiff and Defendant (collectively, the "Parties") have been litigating this action since January 17, 2020. Following the filing of the Action, Defendant provided Plaintiff with information regarding the number of job applicants and employees for whom Defendant procured consumer reports using the same or substantially similar FCRA consent forms as provided by Continuum HR to the Plaintiff and attached as Exhibit "A" to the Complaint over both the two-year and five-year statute of limitations period preceding the filing of the Complaint.

**B.    Mediation and Settlement Agreement**

On May 5, 2020, the Parties attended mediation and were able to reach a

settlement in principal on the terms and conditions contained herein.  The Parties

thereafter executed a Revised Settlement Agreement (Attached hereto as Exhibit

A -the "**Settlement Agreement**").  The Settlement Agreement, subject to Court

approval, provides for settlement under the following key terms:

- Certification for settlement purposes of a class of all natural persons residing in the United States (including all territories and other political subdivisions of the United States) for whom Continuum HR procured a consumer report for employment purposes using the same or substantially similar FCRA consent form as provided by Continuum HR to Plaintiff from January 17, 2015, until the date of settlement approval (the "**Settlement Class**") - a class of approximately 1,140 people, with approximately 602 individuals in the two-year statute of limitations period preceding the date the Plaintiff filed the Complaint ("**Two Year Class**") and approximately 538 individuals in the three to five-year statute of limitations period preceding the date the Plaintiff filed the Complaint ("**Three Year Class**");

- Defendant agrees to establish a Settlement Fund in the amount of Two Hundred Twenty Thousand Dollars ($220,000.00) (the "**Settlement Fund**").  The Net Settlement Fund shall be the amount of money remaining after the Settlement Fund is reduced by the Class Representative general release compensation, the cost of Notice to the Class and Settlement Administration, and Class Counsel's attorneys' fees and costs, including reimbursement for the cost of mediation.;

- Payment from the Settlement Fund of an attorneys' fees award not to exceed Seventy-Three Thousand Two Hundred Sixty Dollars ($73,260.00), if approved by the Court, plus reimbursement from the Settlement Fund for mediation costs;

- Payment from the Settlement Fund of to the Plaintiff Ted Broughton approved by the Court, for  Five Thousand Dollars ($5,000.00) as consideration for his agreement to execute a general release with Defendant; and

- Notice and Administration by a Settlement Administrator deducted from the Settlement Fund not to exceed Twenty Thousand Dollars ($20,000.00), with any unused portion reverting back to Defendant.

- The Settlement Payments will be calculated and distributed to the Settlement Class Members *pro rata* as follows:

  - Eighty percent of the Net Settlement Fund shall be distributed *pro rata* (1/602) to those members of the Two-Year Class of 602 individuals who submit a timely and valid Claim Form;

  - Twenty percent of the Net Settlement Fund shall be distributed *pro rata* (1/538) to those members of the Three Year Class of 538 individuals who submit a timely and valid Claim Form.

- Any unused portion of the Net Settlement Fund shall revert to Defendant.

## II.    STATEMENT OF ISSUES

The issues before the Court are (a) whether to approve the Settlement Agreement on a preliminary basis, and (b) whether to approve the Notice of Proposed Class Action Settlement for distribution to members of Class.

## III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The Law Governing Preliminary Approval

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution

of justice...." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted).  As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions §11.50, at 155 (4th ed. 2002).

"'At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.' 4 Newberg on Class Actions § 11.26 (4th ed. 2010). 'Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.' *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010)." *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015). This Court has set forth the following process for preliminary approval of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D.Fla.2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.2008). The factors considered are (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition

to the settlement," and (6) "the stage of proceedings at which the settlement was achieved." *Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (Merryday, J.).

The fact that the parties agreed to a "claims-made" settlement and full reversion to defendant does not render its terms unreasonable. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.") (citing to *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)); *Casey v. Citibank*, No. 12-cv-820 (N.D.N.Y.) (D.E. 222 at ¶ 6) (approving virtually identical claims- made settlement and finding that regardless of the take rate, "[t]he settlement confers substantial benefits upon the Settlement Class members, is in the public interest, and will provide the parties with repose from litigation."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (discussing claims-made settlement and affirming contingency fee award based on total possible recovery); *Shames v. Hertz Corp.*, 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H*

*& R Block Enters. LLC,* No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

### 1. The Settlement Agreement Is Not the Product of Fraud or Collusion.

In assessing this factor, courts must presume that no fraud or collusion occurred unless there is evidence to the contrary. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). There is no evidence of fraud or collusion here. The proposed settlement in the Settlement Agreement resulted from arm's length negotiations between Plaintiff and Defendant conducted by capable, experienced attorneys and with the assistance of a seasoned and respected mediator, Mr. Carolos Burruezo. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). Courts have consistently held that the presence of an independent mediator negates any suggestion of fraud or collusion. *See, e.g., Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.,* 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014). There was no fraud or collusion in reaching the Settlement. During this

process, the Parties thoroughly evaluated their claims and defenses in order to negotiate what they believe is the most optimal settlement on behalf of the settlement class.

The absence of fraud and collusion is evidenced by a settlement reached after months of litigating and a very lengthy mediation session. Additionally, there is no evidence that Plaintiff sacrificed the interests of the Settlement Class for his own financial gain. Under the Settlement Agreement, Plaintiff will receive the same settlement payment as the other members of the Settlement Class.[1]

The proposed settlement reached by Plaintiff and Defendant resulted from concessions and compromise by the parties. The Settlement Agreement is a product of the functioning of the adversarial and negotiations processes, not fraud or collusion. Accordingly, the first factor supports approval of the settlement.

## 2. Litigating this Case Through Trial Would Be Complex, Expensive, and Time-Consuming.

Although the total expenses that the parties will incur if this litigation progresses and the duration of the litigation, including the appellate process, cannot be predicted with certainty, Plaintiff and Defendant will vigorously advocate for their respective positions on various legal and factual issues, that will likely entail significant motion practice and likely trial. Defendant denies liability for any

---

[1] Plaintiff has disclosed to the Court he is receiving $5,000.00 as compensation for executing a general release and pursuant to the Supplemental Settlement Agreement.

willful violations of the FCRA and asserted numerous affirmative defenses to Plaintiff's individual and alleged class claims.

Furthermore, the parties will incur significant expenses for certification and likely appeal of the certification of the class, if the class is certified; two issues where Plaintiff's and Defendant's positions differ.  Trial and a potential of post-trial appeals further increases the costs and delay of litigation.

There is no reason to believe that issues raised before, during, or after a trial would be any less vigorously litigated by the parties or less expensive and time-consuming to resolve.  Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted litigation.  The proposed settlement will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement.  Thus, this factor weighs in favor of approving the settlement proposed in the Settlement Agreement. *See Bennett,* 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Ayers v. Thompson*, 358 F.3d 356, 2369 (5th Cir. 2004) (holding that settlement would avoid risks and burdens of potentially protracted litigation weighed in favor of approving settlement).

### 3.  Settlement Class Counsel Has Documents and Other Information to Realistically Value the Claims.

The parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369.  Specifically, Plaintiff has obtained sufficient discovery from Defendant to allow for a well-informed and

comprehensive settlement for the Settlement Class.  Plaintiff and Defendant have reviewed Defendant's records for the relevant time period and determined that the Class consists of approximately 1,140 individuals, including Plaintiff.

In addition to the discovery described above, the parties have extensively analyzed legal authorities regarding FCRA claims on a nationwide basis.  Counsel for the parties have discussed their claims and defenses with each other.

As such, the parties believe that they have sufficient information to reach a fair, reasonable, and adequate settlement.  The Settlement Agreement was negotiated based on the parties' realistic, independent assessments of the merits of the claims and defenses in this case and should be approved.

### 4. Ultimate Success on the Merits of the Claims Is Uncertain Given the Risks of Litigation.

When evaluating a proposed class action settlement, the court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation. *See Bennett,* 737 F.2d at 986*; Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  Here, recovery under the Settlement Agreement is favorable for the 1,140 Class members given the general uncertainty surrounding all litigation and the risks specific to this case.

If this litigation proceeds, Defendant intends to continue to vigorously defend the claims, and Plaintiff and the Settlement Class will face legal challenges by Defendant, including challenges to merits of their claims, certification, and an appeal on class certification, if a class is certified.  Any one of these challenges could significantly prolong the litigation at considerable expense to the parties and

potentially result in no recovery for the class members. Each of these phases of litigation presents uncertainty and risks, which the settlement allows the parties to avoid.

Without this settlement, in order for members of the settlement class to recover any statutory damages under the FCRA, they must not only prove that Defendant failed to comply with the disclosure and authorization provisions, but also that Defendant did so willfully. *See* 15 U.S.C. § 1681n(a). Although Plaintiff contends that the violations were willful, Defendant will contest the question of willfulness if the lawsuit is further litigated. *See, e.g., Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful); *See also, Lewis v. Southwest Airlines Co.*, 2018 U.S. Dist. LEXIS 5576 (N.D. Tex. Jan. 11, 2018) (summary judgment for defendant on issue of willfulness). And, absent the settlement, certification under the current class definition is not certain. Although Defendant denies liability and has asserted affirmative defenses to the claims, Defendant nevertheless recognizes, as Plaintiff does, the risks inherent in proceeding to trial.

A negotiated settlement that provides immediate relief is preferable to protracted litigation and an uncertain result in the future. Weighed against the risks associated with litigation, the proposed settlement is fair, reasonable, and adequate.

### 5.    The Settlement Agreement Is Fair in Light of the Possible Range of Recovery and Certainty of Damages.

The Settlement Agreement should be approved because the proposed settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at trial.  In his Complaint, Plaintiff seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for himself and the other class members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorney's fees and costs.[2] However, as § 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under § 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a).  And, even if liability for willful noncompliance is established as Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

---

[2] § 1681(n)(a) of the FCRA states that a person who willfully fails to comply with any requirement under 15 U.S.C. § 1681 et seq. regarding a consumer is liable to the consumer in an amount equal to the sum (a) "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and nor more than $1,000.00;" (b) punitive damages in such amount as the court may allow; and (c) the costs of an action, if successful, to enforce liability under this Section plus reasonable attorneys' fees as determined by the court. 15 U.S.C. § 1681n(a)(1)(A), (2)-(3) (emphasis added).

The settlement proposed in the Settlement Agreement secures a Settlement Payment to each Settlement Class Member, as determined by whether the individual is within the Two-Year Class or the Five-Year Class, so long as he or she timely submits a proper Claim Form.  Even if the settlement class established liability against Defendant for willful violations of the pertinent provisions of the FCRA, a real risk exists that the class members could recover less after successfully litigating their claims through trial than the payment negotiated by the parties in the Settlement Agreement.

The settlement proposed in the Settlement Agreement falls within the reasonable range of possible recovery for members of the settlement classes.  "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010).   Balancing the risk that liability cannot be established against Defendant for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages supports settlement.

### 6.   Settlement Class Counsel and the Parties Support the Settlement.

As evidenced by the Settlement Agreement itself and this Motion in which the parties jointly request approval of the settlement, the terms of the settlement as proposed have the obvious support of Plaintiff, Settlement Class Counsel, and

Defendant.    Plaintiff and Defendant believe, based on their independent assessments, that settlement is in their respective best interest.    Plaintiff and Settlement Class Counsel have likewise concluded that the proposed settlement is in the best interest of the Class.

Furthermore, the parties anticipate that the settlement will receive broad support from putative class members, especially considering that each individual member will receive a settlement check that is reasonable and consistent in the context of class action litigation.    Even if applicants in the settlement class were able to overcome the difficulties of financing and finding legal counsel to pursue their relatively small individual claims, few members of the settlement classes are likely to be inclined toward pursuing their individual claims.

Therefore, it is unlikely that settlement class members will oppose releasing their pertinent FCRA claims that in reasonable probability they never intended to bring or were unaware to have possessed.    Even if any putative class member does not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed class settlement and retain his or her individual FCRA claims against Defendant rather than participating in the settlement.

The Parties believe that the Settlement Agreement represents a fair, reasonable, and adequate settlement.    Consequently, the support of Plaintiff,

Settlement Class Counsel, the putative class members of each settlement class, and Defendant weighs in favor of approving the settlement.

### B. The Action Meets the Requirement for Rule 23 Certification and Class Resolution.

As a threshold issue, the Court must find the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). If Plaintiff clears this initial threshold, Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class. S*ee* Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that: (5) questions of law or fact common to all class members predominate over individual issues, and (6) that the class action mechanism be superior to other available means of adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

Accordingly, under Rule 23(a) every putative class first must meet the prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *See* Fed. R. Civ. P. 23(a). Rule 23(b) defines the type of class certification triggering the appropriate notice requirements and procedures set forth

in Rule 23(c).[3]  Plaintiff seeks certification pursuant to Rule 23(b)(3) because questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly an efficiently adjudicating the controversy.  Plaintiff respectfully requests that the action be certified as a class action pursuant to Rule 23(b)(3) for the reasons stated more fully below.

### 1.    The Proposed Classes Are "Defined and Clearly Ascertainable"

The Eleventh Circuit has explained that Rule 23 demands the Class's members be ascertainable, that is, defined by "objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Bussey v. Macon Cnty. Greyhound Park, Inc*., 562 Fed.Appx. 782,787 (11th Cir. 2014).  Identifying class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry." *Id.*  The putative class satisfies this element as Background Check Class members are limited to applicants provided the same or substantially similar forms that were provided to Plaintiff. Importantly, Defendant has already confirmed through its consumer reporting

---

[3] As such, this class action invokes Rule 23(c)(2) which provides that the  court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and provides for the specific content for the notice to members of the class.

agency individuals who were provided the FCRA Disclosure or substantially similar documents during the relevant time period.

### a.    *The putative classes are sufficiently numerous.*

The first requirement under Rule 23(a) is that the putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1) "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla. 2002); *see also Cox . Am. Cast Iron Pipe Co.*, 784 F. 2d 1546, 1553 (11th Cir. 1986). Here, there are over 1,000 class members, far above the minimum requirement. The nature and size of the individual claims also make joinder impracticable. Modest claims such as these are well suited for class treatment. *See, e.g., Speer v. Whole Foods Market Group, Inc.,* Case No.: 8:14-cv-3035-T-26TBM (M.D. Fla., Sept. 16, 2015) (Doc. 58) (FCRA class preliminarily certified by Judge Lazzara based on identical FCRA claims for settlement purposes). Additionally, the judicial resources required for multiple FCRA claims against Defendant to remedy the issues at issue in this lawsuit would be tremendous and wasteful. For these reasons, Plaintiff has satisfied the numerosity requirement of Rule 23(a).

### b.  *Plaintiff has presented common questions of fact and law.*

"A class may be certified only if there are questions of law or fact common to the class." *Weekes-Walker*, 281 F.R.D. at 525.  Courts in this circuit have held that the commonality threshold is met when a defendant has "engaged in a standardized course of conduct that affects all class members." *In re Terazoin Hydrochloride*, 220 F.R.D. 672, 686-87 (S. D. Fla. 2004*)*; *Walco Inv. Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (commonality "does not require that all of the questions of law or fact raised by the case be common to all of the Plaintiffs.").  Here, common questions of fact and law exist based on Defendant's practices and the subject FCRA disclosure form.  In fact, district courts in the Middle District of Florida have certified a multitude of FCRA classes in which common documents or forms have been provided to class members, or a defendant's purportedly uniform policies and procedures impacted class members in the same way. See, e.g. *Graham*, 2017 WL 2799928; *Coles v. Stateserv Medical of Florida, LLC et al,* No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) (Doc. 45).

### c.  *The Named Plaintiff's claims are typical of the claims of the classes.*

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (citing *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008)). In this case, the legal theory underlying the claims of the members of each putative class is virtually identical to the Named Plaintiff's FCRA claims. All of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories.

> ### d.  The Named Plaintiff and his Counsel will fairly and adequately protect and represent the interests of the class.

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives

and the class; and (2) whether the representatives will adequately prosecute the action. *Rosario-Guerro*, 265 F.R.D. at 628; *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F. 3d 1181, 1189 (11th Cir. 2003).   Here, Named Plaintiff and Class Counsel's adequacy have not been challenged.

      C.    **The Notice Of Class Action Settlement Should Be Approved Because The Form And Manner Of The Notice Satisfies The Requirements of Rule 23 And Due Process.**

The Notices of Class Action Settlement to be mailed to the Settlement Classes are appended to the Settlement Agreement as Exhibit "2".[4]  The content of the proposed class notice and the method for notifying members of each settlement class satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comport with due process.

Under Rule 23(e)(1), when approving a class action settlement, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  In addition, for classes certified under Rule 23(b)(3), courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) also sets out the required contents of the class notice. *Id.*   The procedures described in the Settlement Agreement for informing class members of the settlement and the Notice of Proposed Class Action Settlement complies with these Rules.

---

[4] Members of the Two and Three Year Classes shall receive notice tailored to the specific class of which they are a member.

The proposed notice plan is reasonable and provides the best notice practicable to the respective settlement classes.  Under the Settlement Agreement, the Notice of Proposed Class Action Settlement will be sent to each class member via first class mail to the last known addresses of class members based on information contained in Defendant's records or obtained by the third-party Settlement Administrator, American Legal Claims Services.  Notice by mail is recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos*, 240 F.R.D. at 296 (sending notice by mail is preferred when all or most class members can be identified).  The Settlement Agreement also includes provisions to ensure that a reasonable effort is made to locate members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible.

The content of the Notice of Proposed Class Action Settlement satisfies Rule 23(c)(2)(B) and due process requirements.  "A settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litigation,* 628 F.3d 185, 197 (5th Cir. 2010).  Due process is satisfied if the notice provides class members with "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*

The Notice of Proposed Class Action Settlement is written in language that is easy to understand. The Notices inform members of the Class of the nature of the case, the definition of the settlement class, the amount of the award that may be claimed, and the claims and defenses. The Notices of Proposed Class Action Settlement also contain information regarding the right to retain their own attorney, their right to request exclusion from the class, the time and manner for requesting exclusion, and the binding effect of the class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B). Because the Notice of Proposed Class Action Settlement communicates the essential terms of the proposed settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the respective settlement classes.

## IV.    THE COURT SHOULD APPROVE A SCHEDULE AND PROCEDURES FOR A FAIRNESS HEARING, FILING CLAIMS, OPTING OUT, OBJECTING, AND FILING A MOTION FOR ATTORNEYS' FEES AND COSTS AND INCENTIVE AWARDS.

Plaintiff requests that, in conjunction with preliminarily approving the Settlement, the Court schedule a fairness hearing to determine whether to finally approve the Settlement. Plaintiff also requests that the Court approve the deadlines and procedures the Settlement Agreement provides for filing claims, opting out, objecting, and filing a motion for attorney's fees and costs, class settlement

administration costs, and an incentive award for Plaintiff.   Under the Settlement Agreement, the schedule would be as follows:

| | |
|---|---|
| Settlement Administrator mails Notice ("Notice Date") | Within 14 days of Preliminary Approval Order |
| Deadline for Motion for Attorneys' Fees and Costs, Class Settlement Administration Costs, and Incentive Award for Plaintiff | 14 days before the deadline for objections |
| Deadline for Objections | 30 days after Notice is mailed by Settlement Administrator |
| Deadline for Opt Outs (Exclusion Requests) | 30 days after Notice is mailed by Settlement Administrator |
| Deadline for Motion for Final Approval | 14 days before Fairness Hearing |
| Fairness Hearing | TBD by Court |
| Deadline for Filing Claim | 60 Days after Notice is mailed by Settlement Administrator |

The procedures for opting out, objecting and submitting claim forms are set forth in detail in Sections 4.1 through 4.9 of the terms of the Settlement Agreement, and the procedures for filing a motion for attorney's fees and costs, class settlement administration costs, and an incentive award are set forth in Sections 6 and 7 of the terms of the Settlement Agreement.   The Claim Forms, attached as Exhibit 1 to the Settlement Agreement, requires only limited information (name, address, phone number, Claim Number) and a statement that the person submitting the form was in fact a job applicant included in the class definition.

**V.    CONCLUSION**

The Court should certify the Settlement Class for settlement purposes because the Settlement Class satisfies the requirements of Rule 23. The Court should approve the Settlement Agreement on a preliminary basis because the proposed settlement is fair, reasonable, and adequate. The Court should appoint Plaintiff's counsel as class counsel and Plaintiff as Class Representative. Class counsel's attorneys' fees and costs are appropriate under Rule 23 for settlement purposes. The Notice of Proposed Class Action Settlement should be approved for distribution to the Settlement Class because it meets the requirements of Rule 23 and due process.

WHEREFORE, Plaintiff, Ted Broughton, for himself and on behalf of all others similarly situated, and Defendant, Payroll Made Easy, Inc. d/b/a Continuum HR request that the Court grant their Motion and enter an Order of preliminary approval.

Dated this 14th day of July, 2021.

*/s/ Marc. R. Edelman*
**MARC EDELMAN, ESQ.**
Florida Bar No.: 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin St., Suite 700
Tampa, FL 33602
Telephone: (813) 577-4722
Facsimile: (813) 257-0572
medelman@forthepeople.com
*Counsel for Plaintiff*

*/s/ Matthew Simpson*
Matthew Simpson, Esq.
*(Pro Hac Vice)*
JonVieve Hill, Esq.
*(Pro Hac Vice)*
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA 30309
Telephone: (404) 231-1400
Facsimile: (404) 240-4249
msimpson@fisherphillips.com
jhill@fisherphillips.com

Christine Howard, Esq.
Florida Bar No.: 87229
FISHER & PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, FL 33602
Telephone: (813) 769-7500
Facsimile:  (813) 769-7501
choward@fisherphillips.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed electronically via the CM/ECF system and has been furnished via electronic transmission and/or via U.S. Mail on this 14th day of July, 2021, to the following:

Matthew Simpson, Esq.
JonVieve Hill, Esq.
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA 30309
msimpson@fisherphillips.com
jhill@fisherphillips.com
*Counsel for Defendant*

Christine Howard, Esq.
FISHER & PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, FL 33602
choward@fisherphillips.com
*Counsel for Defendant*

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**