UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TED BROUGHTON,

      Plaintiff,

v.                                                                                  Case No. 2:20-cv-41-NPM

PAYROLL MADE EASY, INC.,

      Defendant.

_____

## ORDER

Plaintiff Ted Broughton brought this action pursuant to a disclosure and authorization provision of the Fair Credit Reporting Act ("FCRA")[1] on behalf of himself and putative class members. (Doc. 1). Broughton claims Defendant Payroll Made Easy, Inc. d/b/a Continuum HR ("Continuum") unlawfully obtained and used consumer reports for employment purposes for all of its employees and job

---

[1] 15 U.S.C. § 1618b(b)(2)(A)(i)-(ii) provides:
  (A)  In general
      Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
        (i)    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
        (ii)   the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

applicants. (Doc. 1, ¶ 1). Broughton contends Continuum violated the FCRA by: (1) procuring consumer reports for employment purposes without providing lawful disclosures in advance; or (2) obtaining consumer reports for employment purposes without obtaining lawful authorization. (Doc. 1, ¶¶ 3, 4). Specifically, Broughton claims Continuum's disclosure and authorization form contained the following deficiencies: (1) it did not inform job applicants that a consumer reporting agency would be compiling their consumer report information; (2) it failed to disclose that the consumer report was being used for employment purposes; and (3) it contained an impermissible liability waiver purporting to release Continuum and its agents and any entity providing information included in the investigation into the applicant's background. (Doc. 1-3; Doc. 40, p. 2). Continuum denies these allegations and denies it committed any FCRA violations. (Doc. 40, p. 2).

On May 5, 2020, the parties attended a mediation and were able to reach a settlement in principal. (Doc. 40, pp. 2-3). [2] The parties thereafter executed a Settlement Agreement (Doc. 24-1) and filed a Second Amended Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class (Doc. 40),

---

[2] After the mediator filed his report indicating the action settled, the Court administratively closed the file and dismissed the action without prejudice. (Docs. 20, 21). The parties then filed a Joint Motion to Open Case for Preliminary Approval of Settlement and Issuance of Notice to Settlement Class (Doc. 23), and the original Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class (Doc. 24). The Court held hearings on February 2, 2021, and again on July 8, 2021, and directed the parties to file amended joint motions. The second amended joint motion is now before the Court.

seeking preliminary approval of the Settlement Agreement so that they may send notice to the putative class members. (Doc. 40, pp. 2-3). For the reasons that follow, the Court grants the motion.

## I.   Analysis

Under Rule 23(e), claims, issues, or defenses of a certified class "or a class proposed to be certified for purposes of settlement" may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. R. Civ. P. 23(e). A class may be certified solely for the purposes of settlement when a settlement is reached before "'a litigated determination of the class certification issue.'" *Dukes v. Air Canada*, No. 8:18-cv-2176-EAK-JSS, 2019 WL 8358700, *1 (M.D. Fla. Sept. 6, 2019), *report and recommendation adopted*, No. 8:18-cv-2176-EAK-JSS, 2019 WL 8358712 (M.D. Fla. Sept. 26, 2019) (quoting *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006)). When making the discretionary decision whether to certify a class under Rule 23, courts should give weight to the parties' agreement to settle a class-action case "'because they and their counsel are in unique positions to assess the potential risks.'" *Id.* (quoting *Pierre-Val v. Buccaneers Ltd. P'ship*, 8:14-cv-01182-CEH, 2015 WL 3776918, *1 (M.D. Fla. June 17, 2015)).

Notwithstanding the parties' consent to certification of a settlement class, a court must independently determine whether the case meets the requirements for

class certification under Rule 23. *Id.* at *3. And Broughton shoulders the burden of satisfying Rule 23's requirements. *Id.*

## A.     The settlement agreement

To approve a settlement, a court must find that it "'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In the class certification arena, a court should consider the following factors:

> "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."

*Id.* (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "But a district court may also rely upon the judgment of experienced counsel for the parties. *Cotton*, 559 F.2d at 1330. Indeed, absent fraud, collusion, or the like, the district court "'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330).

*Fraud or collusion*

In this matter, the Settlement Agreement is not the product of fraud or collusion. Indeed, the parties have litigated this action for months and the mediation was lengthy. (Doc. 40, pp. 7-8). The proposed settlement was reached after arm's

length negotiations by experienced attorneys and with the assistance of a seasoned mediator. (Doc. 40, pp. 7-8). The use of a mediator and the arm's length nature of the negotiations militates against any suggestion of fraud or collusion. *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, *3 (M.D. Fla. Apr. 23, 2020) (citation omitted).

*Likelihood of success at trial*

Broughton's likelihood of success at trial—which is the most important factor—weighs in favor of approval of the Settlement Agreement. *See Hanley*, 2020 WL 2517766 at *4 (citing *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). Continuum intends to vigorously defend this action absent a settlement and Broughton faces legal challenges not only to the merits of the action but also to certification of the class as well as the possibility of an appeal. (Doc. 40, pp. 10-11). The uncertainty of prevailing in this case weighs in favor of Broughton and putative class members settling this action pursuant to the Settlement Agreement. *See Dukes*, 2019 WL 8358700 at *2.

*Range of possible recovery; and the point on or below the range of possible recovery at which settlement is fair, adequate, and reasonable*

The second and third factors are easily combinable. *Hanley*, 2020 WL 2517766 at *4. The range of possible recovery spans from a finding of no liability to a finding of liability with varying amounts of monetary damages awarded. *Id.* (citing *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla.

2014)). Here, the parties agree that under 15 U.S.C. § 1681n(a)(1)(A)(2)-(3), each putative class member may recover statutory damages of $100.00 to $1,000.00, punitive damages, and attorney's fees and costs. (Doc. 28, p. 12). But to recover, Broughton must establish willful noncompliance under 15 U.S.C. 1681n(a)—negligent non-compliance is not sufficient. (Doc. 40, p. 12). Further, an award of damages is left to the discretion of the jury, which may return an award of no damages. (Doc. 40, p. 12).

Before deciding to settle, Broughton obtained sufficient discovery to make a well-informed decision to settle this matter on behalf of himself and the class. (Doc. 40, pp. 9-10). Further, the parties have analyzed the nationwide body of law discussing similar FCRA claims. (Doc. 40, p. 10). Under the terms of the Settlement Agreement, the parties agree to a gross settlement of $220,000.00 to resolve the claims. (Doc. 24-1, ¶ 2.5). The Settlement Agreement provides that $97,392.00 of the settlement-claim fund will be distributed to class members who applied for employment between January 17, 2018 through January 17, 2020—602 individuals—and who submit timely and valid claim forms (Doc. 24-1, ¶ 2.5.2; Doc. 40-2, p. 3). If such a class member submits a proper claim form, the class member will receive $161.78. (Doc. 24-1, ¶¶ 2.5.2, 2.5.3; Doc. 40-2, p. 6). Any unclaimed funds revert back to Continuum. (Doc. 24-1, ¶ 2.5.4; Doc. 40, pp. 3; 4; Doc. 40-2, pp. 4, 12).

The Agreement also provides that $24,348.00 of the settlement-claim fund will be distributed to those members of who applied for employment between January 17, 2015, through January 16,[3] 2018—538 individuals—and who submit timely and valid claim forms with any unclaimed funds reverting back to Continuum. (Doc. 24-1, ¶¶ 2.5.2, 2.5.3, 2.5.4; Doc. 40-2, p. 11).[4] If such a class member submits a proper claim form, the class member will receive $45.25. (Doc. 24-1, ¶ 2.5.2; Doc. 40-1, p. 3; Doc. 40-2, pp. 10, 17). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Hanley*, 2020 WL 2517766 at *4 (citing *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)). The Court finds the recovery amounts in the Settlement Agreement are within the range of reasonableness.

If approved by the Court, the parties agree to disburse from the settlement-claim fund attorneys' fees not to exceed $73,260.00, mediation costs, and payment to the Settlement Administrator of no more than $20,000.00. (Doc. 40, p. 3). Under

---

[3] In the Agreement, the parties defined one subclass as members who applied for employment between "January 17, 2015, through January 17, 2018" and a second subclass as members who applied for employment between "January 17, 2018 through January 17, 2020." There is a "scrivener's error" of a one-day overlap—January 17, 2018. The Court corrected this error by changing the first subclass dates to end on January 16, 2018. *See also* p. 12.

[4] The parties clarified in the notice and claim form that the settlement payments are for a sum certain and not a "pro rata" share as originally described in the settlement agreement. (*Compare* Doc. 24-1, ¶ 2.5.2, *with* Doc. 40-1, pp. 2, 3; Doc. 40-2, pp. 2, 6, 10, 14).

15 U.S.C. § 1681(n)(a), a consumer is entitled to costs and reasonable attorneys' fees. Based on the representations in the joint motion and on review, the Court finds these terms fair, adequate, and reasonable.

In addition, if approved by the Court, Broughton will receive $5,000.00 as consideration for his agreement to execute a general release and a Supplemental Settlement Agreement.[5] (Doc. 24-1, pp. 29-35; Doc. 24-2, ¶ 2.5.1; Doc. 40, p. 3; Doc. 40-2, pp. 6, 8, 12, 14). This agreement would "fully and conclusively resolve and settle all matters and claims Broughton could assert against Defendant and the Released Parties. . .." (Doc. 24-1, p. 29). The Court finds this provision fair, adequate, and reasonable.

*Complexity, expense, and duration of litigation*

As discussed above, both parties would vigorously advocate for their respective positions on both legal and factual matters, which would entail extensive motion practice and then a likely trial. (Doc. 40, pp. 8-9). Plus, the parties would incur expenses for certification of the class and a possible appeal of that ruling. (Doc.

---

[5] While the Eleventh Circuit held incentive or service awards that compensate a class representative solely for his time and for bringing a lawsuit unlawful, the facts of the instant case differ. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) ("the type of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit" while commonplace is unlawful). While the settlement agreement contains references to a "service award," in the second amended motion and notice, the parties clarified that Broughton is receiving additional compensation for executing a supplemental agreement, which contains a much broader release of claims. (Doc. 24-1, pp. 29-35; Doc. 24-2, ¶ 2.5.1; Doc. 40, p. 3; Doc. 40-2, pp. 6, 8, 12, 14).

40, pp. 8-9). The parties have evaluated the strengths and weaknesses of their positions and find the proposed settlement would save considerable time and resources that would otherwise have been spent on litigation. (Doc. 40, p. 9). *See Fresco v. Auto Data Direct, Inc.*, No. 03-61063-civ-Martinez, 2007 WL 2330895, *6 (S.D. Fla. May 14, 2007) ("Were this matter to continue, numerous, complex issues of law would have to be resolved at the cost of considerable time and expense to the parties and the Court."). Thus, the complex issues, potential duration of litigation, and the avoidance of significant litigation expense weigh in favor of preliminarily approving the Settlement Agreement.

*Substance and amount of opposition to settlement*

At this stage of the litigation, the substance and amount of opposition to the settlement is unknown because notice of the Settlement Agreement has not been provided to putative class members. *See Dukes*, 2019 WL 8358700 at *1 ("the amount of opposition to the Agreement is not applicable because notice of the Agreement has not yet been provided to the Settlement Class members."). The parties anticipate the settlement will receive broad support from the putative class members. (Doc. 40, p. 14). The parties speculate few members of the class would be

inclined to pursue their individual claims based on the relatively small amount of each individual claim. (Doc. 40, p. 14).

*Stage of proceedings at which settlement was achieved*

"'The stage of the proceedings at which settlement is achieved is evaluated to ensure that plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Hanley*, 2020 WL 2517766 at *5 (internal quotations omitted) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014)). But early settlements are still favored to prevent the need for vast formal discovery. *Id.*

While the parties settled relatively early in this litigation, they did so with the benefit of discovery, formal mediation, and negotiations between counsel. (Docs. 1, 20). This factor weighs in favor of the Settlement Agreement.

Based on the representations of the parties and the terms of the Settlement Agreement and the Supplemental Settlement Agreement, all factors together weigh in favor of the Court approving the terms of the settlement.

## B.     Conditional class certification

Before addressing each requirement of Rule 23, the Court must first address the issues of standing, class definition, and ascertainability. For standing, a court must determine whether the named class representative has Article III standing to raise each class claim. *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577

(M.D. Fla. 2006) (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). "The three requirements for Article III standing are familiar: the plaintiff must allege that he suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent'; that injury must be 'fairly traceable to the challenged action of the defendant'; and it must be 'likely ... that the injury will be redressed by a favorable decision.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)). A plaintiff bears the burden of establishing standing. *Id.* In the instant case, Broughton alleges that Continuum willfully invaded the class members' right to privacy by obtaining and illegally disseminating their consumer reports. (Doc. 1, ¶¶ 46-54). The Court finds Broughton has satisfied the standing requirement.

Traditionally, courts have considered both the class definition and ascertainability as one inquiry. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). A class must be adequately defined so that putative class members are readily ascertainable. *Id.* Here, Broughton defines the class as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) for whom Continuum HR procured a consumer report for employment purposes using the same or substantially similar FCRA consent form as provided by Continuum HR to Plaintiff from January 17, 2015, until the date of settlement approval(the "Settlement Class") - a class of approximately 1,140 people, with approximately 602 individuals in the two-year statute of limitations period preceding the date the Plaintiff filed the Complaint ("Two Year Class") and approximately 538 individuals in the three to five-year statute

of limitations period preceding the date the Plaintiff filed the
Complaint ("Three Year Class").

(Doc. 40, p. 3; Doc. 24-2, p. 2).[6] To clarify who the members of each sub-class are,

the parties will send separate notices and claim forms to each class. Further, in the

notice, the parties clearly define the "Two Year Class" as individuals who applied

for employment between January 17, 2018 through January 17, 2020 (Doc. 40-2, p.

3), and the "Three Year Class" as individual who applied for employment between

January 17, 2015 through January 16,[7] 2018 (Doc. 40-2, p. 11). Broughton claims

and Continuum confirms that the putative class definition is limited to applicants

who were provided the same or substantially similar forms that Broughton received.

(Doc. 40, pp. 16-17).

Given the contours of the two sub-classes, which taken together are intended

to comprise the entire class, the Court will preliminarily certify a class comprised of

people who applied for employment between January 17, 2015, and January 17,

2020. As so modified, the class is defined as:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United States)
> for whom Continuum HR procured a consumer report for
> employment purposes using the same or substantially similar
> FCRA consent form as provided by Continuum HR to Plaintiff
> from **January 17, 2015 to January 17, 2020** (the "Settlement
> Class") - a class of approximately 1,140 people, with

---

[6] The Court notes the class definition was modified from the language found in the Complaint.
(*See* Doc. 1, ¶¶ 6, 7).

[7] *See supra* note 3.

> approximately 602 individuals in the two-year statute of
> limitations period preceding the date the Plaintiff filed the
> Complaint ("Two Year Class") and approximately 538
> individuals in the three to five-year statute of limitations period
> preceding the date the Plaintiff filed the Complaint ("Three
> Year Class").

The Court finds the modified class definition is adequately defined and membership

is reasonably ascertainable.

Rule 23 provides a legal roadmap for courts to follow when determining

whether to certify a class. *Valley Drug Co.*, 350 F.3d at 1187. Pursuant to Rule 23(a),

a plaintiff must establish:

(1)   the class is so numerous that joinder of all members is impracticable;
(2)   there are questions of law or fact common to the class;
(3)   the claims or defenses of the representative parties are typical of the
      claims or defenses of the class; and
(4)   the representative parties will fairly and adequately protect the
      interests of the class.

Fed. R. Civ. P. 23(a). Once these requirements are met, then the plaintiff must satisfy

one of the requirements of Rule 23(b). *Id.* at 1188.

Beginning with numerosity, a class must be "so numerous that joinder of all

members is impractical." Fed. R. Civ. P. 23(a)(1). While the numerosity showing is

generally a low hurdle, the mere allegation of numerosity is insufficient. *Vega v. T-*

*Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). A plaintiff need not show

the precise number of members for a putative class and there is no fixed number, but

generally less than twenty-one is inadequate and more than forty is adequate. *Cox v.*

*Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). In this matter, there

are over 1,000 class members—far above the minimum requirement—making joinder impracticable. (Doc. 40, p. 17). Thus, the proposed class is sufficiently numerous.

Commonality requires the plaintiff to demonstrate that there are some factual or legal theories that are susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Broughton represents he and the putative class members were victims of a common practice by Continuum of obtaining consumer reports in violation of the FCRA. (Doc. 40, p. 18). Consequently, the resolution of issues concerning his claim will resolve issues common to the class.

Next, to satisfy the typicality requirement under Rule 23(a)(3): "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, "'[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d at 1357 (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). As long as there is a strong similarity of legal theory, the typicality requirement will be satisfied despite substantial factual differences. *Id.* (citation omitted). Here, Broughton and the class members' claims are based on substantially similar if not identical facts and are grounded in the same legal theories. (Doc. 40, pp. 18-19). Thus, the typicality requirement is met.

Finally, Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." This requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189. If a substantial conflict exists, class certification is inappropriate, but minor conflicts alone will not defeat certification. *Id.* There is no apparent adversity between Broughton and any putative class members and the conduct of this action to date demonstrates that it will be adequately prosecuted as a class action.

Having satisfied Rule 23(a)'s requirements, the Court turns to the Rule 23(b)(3) requirements. To maintain a class under Rule 23(b)(3), Broughton must demonstrate: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Vega*, 564 F.3d at 1277. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Williams*, 568 F.3d at 1357 (citation and quotations omitted). And with respect to superiority, courts consider factors such as "the class members' interests in individually controlling the prosecution or defense of separate

actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Given the common course of conduct at issue, the Court finds the common issues of fact and law predominate, and have a direct impact on every class member's effort to establish liability and monetary relief. Furthermore, based on the potential numbers of putative class members, the small amount of possible recovery, and the similarity of facts and legal theories, there is no strong interest in bringing individual claims and a class action is superior to other available methods to fairly and efficiently adjudicate the overall controversy. Finally, there is no indication that putative class members have brought other actions. Thus, Broughton has satisfied all applicable Rule 23(a) and (b) requirements.

Lastly, after review of the requirements for class counsel under Rule 23(g)(1), the Court finds attorney Marc Reed Edelman of Morgan & Morgan, PA meets the requirements for appointment, *see* Rule 23(c)(1)(B), and also finds Ted Broughton should be appointed as the class representative.

## C.   Notice and claim form

Rule 23(e) governs notice to the class and requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."

For classes certified under Rule 23(b)(3) or Rule 23(e)(1) (classes to be certified for settlement purposes), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be sent by United States mail, electronic means, or other appropriate means. *Id.* And the notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

The parties agree to send separate notices and claim forms to each sub-class, which are divided by when the putative class member applied for employment. These notices are attached as Exhibit 2 to the second amended joint motion and will be sent by first class mail to the last known address of class members in Continuum's records or obtained by the third-party Settlement Administrator. (Doc. 40, p. 21).

Reasonable efforts will be made to locate members whose notices are returned undelivered and to re-send the notices to these people when possible. (Doc. 40, p. 21). The proposed forms of the notice contains all of the requirements of Rule 23(c)(2)(B)(i)-(vii), including the nature of the action, the definition of the settlement class, the claims and defenses, information regarding the right to retain an attorney, the right to request exclusion from the class, the time and matter for requesting exclusion, and the binding effect of a class judgment. (Doc. 40-2). In addition, the Notices include a website address and contact information for both the settlement administrator and class counsel for class members to obtain more information. (Doc. 40-2, pp. 8, 16). This proposed method of providing notice is reasonable.

Separate claim forms will be sent to the members of each sub-class and are also attached to the second amended joint motion. (Doc. 40-1, pp. 2-3). The claim forms contain simple language and require limited information, such as name, address, and phone number. The Court approves the claim form.

### D.     Final confirmation schedule

The Court finds the parties' proposed confirmation schedule (Doc. 40, p. 23) appropriate as modified and set forth below:

| Settlement Administrator mails notice (Notice Date) | Within 14 days of Preliminary Approval Order |
|---|---|
| Deadline for Objections | 60 days after Notice is mailed by Settlement Administrator |

| Deadline for Opt-Outs (Exclusion Requests) | 60 days after Notice is mailed by Settlement Administrator |
|---|---|
| Deadline for Filing Claim | 60 days after Notice is mailed by Settlement Administrator |
| Certification by Settlement Administrator of compliance with Notice provisions | 30 days before Fairness/Final Approval Hearing |
| Deadline for Motion for Final Approval of Class Action, and for Fees, and Costs | 28 days before the Fairness/Final Approval Hearing |
| Fairness/Final Approval Hearing | To be set at least 125 days after Preliminary Approval Order |

Lastly, in the Settlement Agreement, the parties seek entry of a final judgment: "reserving to the Court continuing and exclusive jurisdiction over the parties with respect to the settlement and the Final Judgment." (Doc. 24-1, p. 22). The Court finds that a retention of jurisdiction would be appropriate, with the length of time to be determined upon disposition of the motion for final approval.

## II.    Conclusion

The Court finds the Settlement Agreement represents a fair and reasonable resolution of this action. Accordingly, the Court preliminary approves the Settlement Agreement. The Court also finds Broughton has satisfied all of the requirements for class certification and as a result, the Court finds the settlement class, as defined herein, is conditionally certified for settlement purposes. **All notices and other**

information for the class members (*e.g.* the website) must define the class in the same manner as the Court has preliminarily approved.[8]

Accordingly, the Second Amended Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class (Doc. 40) is **GRANTED**; the Settlement Agreement is preliminarily approved; the class as defined herein is conditionally certified; attorney Marc Reed Edelman is appointed as class counsel and Plaintiff Ted Broughton is appointed as class representative; the Notices (Doc. 40-2) and Claim Forms (Doc. 40-1) are approved; and the final confirmation schedule set forth in this Order is approved. The Court will set the fairness hearing by separate notice.

**ORDERED** in Fort Myers, Florida on July 27, 2021.

*Nicholas P. Mizell*

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

---

[8] For example, the following language in the first paragraph of **both** Notices must deleted: "through the date of the Preliminary Approval Order;" and substituted with "and January 17, 2020," (Doc. 40-2, pp. 2, 10), and the Three Year Class Notice must also modify the definition of this sub-class to "between January 17, 2015-January **16**, 2018 (Three Year Class) (Doc. 40-2, p. 11). These same changes **must** be made throughout all of the documents that are either sent to or accessible by the class.